IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| ROBERT LEE CORNELIUS | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:13cv316 |
| HENDERSON COUNTY SHERIFF'S OFFICE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Robert Cornelius, proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Cornelius named the Henderson County Sheriff's Office and a sheriff's deputy, David Faught.

In his complaint and at an evidentiary hearing, Cornelius stated that he was harassed over a period of months by Henderson County sheriff's deputies, who would stop him, search him, and give him tickets. They raided his home on two separate occasions, of which the first was in July of 2010. No one was home at that time. Cornelius states that the task force tore up walls, broke computer screens, and did "a lot of damage." The second raid was in September of 2010. At that time, Cornelius states that Faught found a tank and said it had anhydrous ammonia in it, but it really had only water.[1]

Cornelius stated that charges concerning the anhydrous ammonia and a charge of drug possession were ultimately dropped. He was also charged with "fleeing," but that charge was likewise dropped. He was in jail on a "blue warrant" for an alleged parole violation, but he also

---

[1] Anhydrous ammonia is a chemical used in the manufacture of methamphetamine.

1

indicated that he spent 10 months in jail on the charges that were later dropped. Cornelius complained that he spent four days in a holding cell when the maximum time he could be there was 72 hours, but stated at the evidentiary hearing that he wanted to drop this claim.

Cornelius states that the sheriff's office began harassing him when he first got out of prison in July of 2008. He says that he got traffic tickets two to five times a month, including a ticket for not wearing his seat belt when he was sitting in a parking lot and not even moving. He complained of losing a substantial amount of property to a mysterious fire, though he did not indicate that any Henderson County officials were connected with this fire, and says that his parole officer accused him of manufacturing drugs. Cornelius stated that he "hid out for two months" and then came for federal court for an evidentiary hearing in this case, but he got arrested instead.

Three weeks before the September 2010 raid, Cornelius states that Faught stopped him and told him "I'm going to lock you up for the rest of your life." He complained that he could not do anything without getting stopped and harassed. Cornelius stated that he had been convicted several years earlier but that he had served his time.

The Court asked Cornelius about the defendants in the case, noting that he could not sue the Sheriff's Office. Cornelius replied that he had a list of people whom he wanted to sue, and the Court granted him leave to file an amended complaint within 30 days. He again complained that Faught pulled him over and harassed him, and said that the September 2010 search was executed by "10-12 people." Cornelius explained that he had eight laptops that he was working on at the time of this search.

Cornelius acknowledged that he pleaded guilty and paid fines on all of the traffic tickets he received, and that both searches of his house were conducted pursuant to warrants. He said that he had not been at home at the time of either of these searches. Because he was not home, Cornelius stated he could not point to any specific property that Faught had destroyed.

Cornelius said he did not file a jail grievance concerning being in the holding cell for four days. He testified that his complaint was about the task force and not the holding cell. Faught had pulled him over "two or three times" before the raids.

In his complaint, Cornelius stated that "they are still harassing me to this day." However, neither his complaint nor his testimony indicated who specifically was harassing him or what form this harassment took.

Investigator David Faught testified at the evidentiary hearing that he received information saying Cornelius had drugs and took this information to the justice of the peace, getting a warrant issued.[2] This was the July 2010 search. In September of 2010, Faught got a warrant from the district judge in Henderson County. When this warrant was executed, the agents found one female in the bedroom and detained her. They learned that other people had fled out the back door and gave chase, capturing a man named Ashley Woods. Nothing was found inside the residence, but a black bag containing methamphetamine was discovered outside. A liquid substance was found in a truck which was believed to be associated with methamphetamine manufacture, and an oxygen tank was also located.

When asked why the anhydrous ammonia and drug charges were dropped, Faught explained that a field test for anhydrous ammonia had been challenged in another case and there was not any other evidence beyond a field test in this case.

Cornelius testified that he had not seek Ashley Woods in 15 years or more and that Woods "works for the cops." Cornelius' cousin told him that Woods "had dope."

The next witness called at the evidentiary hearing was jail captain Mike Starkey. He testified that in 2010, the Texas jail standards provided that inmates could be in a holding cell for up to 72 hours, and that Cornelius spent 56 hours in the holding cell. He explained that a holding cell was

---

[2]Cornelius' testimony will be taken as true for purposes of this Report, and all testimony or evidence which contradicts Cornelius' testimony will be disregarded. *See Wilson v. Barrientos*, 926 F.2d 480, 482-83 (5th Cir. 1991).

simply a place to hold inmates until they could be placed elsewhere, and that inmates in holding cells received food, water, bedding and medical care. Starkey confirmed that Cornelius did not file a grievance concerning being in the holding cell for over 72 hours.

In response, Cornelius stated that he was in jail on a blue warrant for a "bogus charge." He said that he had no complaints with the jail and was treated well there, and that he does not believe in grievances. He again said that he spent four days in the holding cell but that he was not really worried about that, saying that he wanted to drop that claim from his lawsuit. At the conclusion of the hearing, the Court gave Cornelius 30 days to file an amended complaint naming the people he wanted to sue; to date, no amended complaint has been received.

### The Defendants' Motion to Dismiss

The Defendants have answered the lawsuit and have filed a motion to dismiss and amended motion to dismiss. The amended motion to dismiss argues that the Sheriff's Office is not a jural entity and cannot be sued in its own name, Cornelius has failed to state a claim upon which relief may be granted, and Cornelius' allegations against Faught lack factual support or a showing of personal involvement. The Defendants also invoke the defenses of qualified immunity, failure to mitigate, the protections and immunities under the Texas Tort Claims Act, failure to exhaust administrative remedies, and contend that Cornelius' injuries are the result of his own conduct rather than that of the Defendants.

### Cornelius' Response

Cornelius filed a response to the original motion to dismiss, but not the amended motion. This response will be treated as being in reply to the amended motion to dismiss as well. In this response, Cornelius states that he was released from prison on July 29, 2008, and three or four months later, he was stopped by a deputy named Jody Miller. Deputy Miller searched Cornelius and his counsel and "talked stuff" to him. He was also stopped in the town of Eustace on April 30, 2009. by an officer named Jason Riggles for failure to maintain a single lane, and again by Riggles in June of 2009 for failing to use his turn signal. He received tickets from an officer named Valentine on

4

June 19, 2009 and in July of 2009, and on October 16, 2009, he got a ticket from officer Kenny Collard for no seat belt. On August 22, 2010, Cornelius received a ticket in the city of Seven Points for no trailer tag lights, which Cornelius says was "my fault." He got another ticket from Collard on August 12, 2011 for "tags out or something."

Two or three months prior to the filing of the response, Cornelius states that "the people at the parole office started messing with my head," so he stopped going to see them. He states that they "talked trash and belittled me to the point I had to get away from them, I hid out." Cornelius states that the Eustace police "have been driving by day and night watching every move I make." He says that he is scared about "a blue warrant to get me before I finish all of this."

Next, Cornelius attaches a letter he apparently wrote in July of 2010, a few days after the raid. This letter says that the task force broke down the door and did considerable damage. He can't sleep because he's afraid they'll come back. Cornelius attaches copies of some of the traffic tickets he received and a copy of the search warrant for his house, as well as photographs of his house after the search. He also includes two "public nuisance violation ordinances," dated August 7 and September 25, 2012, charging him with accumulating trash in the form of old tires and instructing him to remove and dispose of these tires properly.

<u>Legal Standards and Analysis</u>

Because evidence outside the pleadings was offered in the form of court and jail records and testimony at the evidentiary hearing, the motion to dismiss is properly construed as a motion for summary judgment. Rule 12(d), Fed. R. Civ. P. This motion for summary judgment is properly before the Court because Cornelius has had ample opportunity to offer evidence and arguments in support of his claim; he filed a response to the original motion to dismiss which has been considered, an evidentiary hearing was conducted at which he gave testimony which the Court has presumed is true, and he was directed at the hearing to file an amended complaint within 30 days, which he has not done.

Cornelius' first claim concerns the alleged destruction of his property by the Henderson County Sheriff's Department in the course of executing the searches. He acknowledges that these searches took place in July and September of 2010, and he signed his lawsuit on April 5, 2013.

There is no federal statute of limitations for §1983 actions, so federal courts borrow the forum state's general personal injury limitations period and applicable tolling provisions. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). In Texas, the applicable period is two years. Tex. Civ. Prac.& Remedies Code, art. 16.003(a); *Burrell*, 883 F.2d at 418. Cornelius offers no reason why the limitations period should be tolled, nor does he explain why he waited over two and a half years to bring this claim. His contention concerning the destruction of his property during the execution of the search warrants is barred by the statute of limitations.

In addition, the Sheriff's Office is not a jural entity; it has no separate legal existence, apart from the county, and thus cannot be sued in its own name. *Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991); *see also Shelby v. Atlanta*, 578 F.Supp. 1368, 1370 (N.D. Ga. 1984); *Post v. Fifth Circuit. Lauderdale,* 750 F.Supp. 1131 (S.D. Fla. 1990); Missouri ex rel. Gore v. Wochner, 475 F.Supp. 274, 280 (E.D. Mo. 1979), *aff'd* 620 F.2d 183 (8th Cir. 1980). To the extent that Cornelius names the Sheriff's Office itself as a defendant, his complaint is without merit.

Cornelius also complains of being harassed by law enforcement officials in that he received numerous traffic tickets as well as public nuisance citations. All of these claims which arose prior to April 5, 2011, which is two years before the day that Cornelius signed his lawsuit, are barred by the statute of limitations.

The two harassment claims identified by Cornelius which fall within the limitations period are a ticket which he received from Officer Collard and the two public nuisance notices he received from the Henderson County Fire Marshal. Neither of these individuals are named defendants in the lawsuit. Furthermore, Cornelius has offered nothing beyond sheer speculation to show that the alleged incidents of harassment, whether within or outside of the statute of limitations, were undertaken for purposes of harassment rather than as good-faith enforcement of traffic codes and city

ordinances. *See Lone Star Chapter, Paralyzed Veterans of America v. City of San Antonio*, civil action no. SA-10-CA-316, 2010 WL 1780353 (W.D.Tex., May 3, 2010) (noting that "plaintiffs' allegations are conclusory, and absent evidence to the contrary, the court must presume that defendants' actions [in enforcing city codes on coin-operated machines] are good faith enforcement of the criminal provisions and not with any intent to suppress plaintiffs' charitable solicitation speech," *citing RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 229 (5th Cir. 2009) (more than an allegation of bad faith is required in a First Amendment code enforcement case, but some proof is required). Cornelius' claim on this point is without merit.

Cornelius complains that "they are still harassing me to this day," but did not indicate who was harassing him or how they were doing so. More particularly, he did not allege that this harassment was being undertaken by Faught, the only named individual defendant.

The Fifth Circuit has stated that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S.Ct. 1937, 1951 (2009). In *Iqbal*, the Supreme Court explained that an adequate pleading does not require "detailed factual allegations," but it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is not sufficient, nor is a complaint which provides naked assertions which are devoid of further factual enhancement; instead. a complaint must contain sufficient factual matter to state a claim to relief which is plausible on its face. Cornelius' conclusory claim of "being harassed to this day" fails to set out a plausible claim for relief against Faught and is without merit.

Cornelius next goes on to say that he was subjected to "false charges, false imprisonment, and false indictments." Under Texas law, a false arrest is tantamount to effecting a false imprisonment; to establish either claim, the plaintiff must show that the defendant carried out (1) a willful detention, (2) without consent of the detainee, and (3) without authority of the law. *Lundy*

7

*v. U.S.*, civil action no. V-06-69, 2009 WL 81924 (S.D.Tex., January 12, 2009), *citing Randall's Food Market v. Johnson,* 891 S.W.2d 640,644-45 (Tex. 1995). If the alleged detention was performed with the authority of law, then no false arrest or imprisonment occurred. *Wal-Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998).

In this case, the evidence offered at the hearing shows that on September 9, 2010, Cornelius was indicted by the grand jury of Henderson County on one charge of possession of a controlled substance (methamphetamine) with intent to deliver and one charge of possession of anhydrous ammonia with intent to manufacture a controlled substance. (Evidentiary Hearing Exhibit Notebook, pp. HC00028, HC00029). A search warrant was issued that same day (HC00051) and an arrest warrant was issued for Cornelius on September 13, 2010 (HC00057). He was arrested that day and booked into the Henderson County Jail. (HC00002). The drug charges were later dismissed and the charges against Cornelius were reduced to a misdemeanor evading arrest charge. (HC00032, HC00033).

The Fifth Circuit has held that where an arrest is made under the authority of a properly issued warrant, the arrest is simply not a false arrest. *Chandler v. Roncoli*, 449 Fed.Appx. 379, 2011 WL 5420833 (5th Cir., November 9, 2011), *citing Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). In this case, the records show, and Cornelius offers nothing to dispute, that his arrest and subsequent detention were carried out under the authority of a properly issued arrest warrant or indictment. As the Fifth Circuit has explained, the Constitution does not guarantee that only the guilty will be addressed; if it did, Section 1983 would provide a cause of action for every defendant acquitted - indeed for every suspect released. *Smith*, 670 F.2d at 526. The fact that the charges of possession of a firearm and possession of anhydrous ammonia were later dropped does not show that the arrest, which was made under the authority of a valid warrant, was false, nor that the detention, which was done under the authority of a valid indictment, was unconstitutional. Nor does the fact that the charges were later dropped show that the indictment was "false," as confirmed by the fact

that an examining trial was conducted on October 28, 2010, which determined that probable cause existed. (HC00041).

Furthermore, the evidence shows that a parole violator's warrant issued for Cornelius on September 14, 2010, which provided additional lawful authority to detain him. Cornelius has failed to show that the indictment was false or that he was subjected to false arrest or false imprisonment, and his claim on this point is without merit.

## Qualified Immunity

Faught invokes the defense of qualified immunity in his answer and motion to dismiss or for summary judgment. The Fifth Circuit has explained that qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a constitutional or statutory right, and (2) that the right was clearly established at the time of the challenged conduct. *Stauffer v. Gearhart*, — F.3d —, slip op. no. 12-20195, 2014 WL 273973 (5th Cir., January 24, 2014) (not yet published), *citing Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). A Government official's conduct violates clearly established law when at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Id.* at 2083. Once a defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013).

In this case, Cornelius has failed to meet his burden of rebutting the defense of qualified immunity because he has not shown that Faught violated a clearly established constitutional or statutory right of which a reasonable law enforcement officer would have known. Nor has he shown that any of Faught's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004). Consequently, the Defendant David Faught is entitled to qualified immunity.

Conclusion

As set out above, the Defendants' motion to dismiss is properly treated as a motion for summary judgment under Rule 12(d), Fed. R. Civ. P. On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Securities and Exchange Commission v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994); *General Electric Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. *First American Bank & Trust of Louisiana v. Texas Life Ins. Co.*, 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Caldas & Sons v. Willingham*, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. *Id.* at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. *Recile*, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary

judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. *Hulsey*, 929 F.2d at 170, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

The movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *John v. State of Louisiana Bd. of Trustees for State Colleges and Universities*, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *see also Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

In this case, the pleadings and the competent summary judgment evidence, viewed in the light most favorable to the Plaintiff, show there are no disputed issues of material fact and that the Defendants are entitled to judgment as a matter of law. It is accordingly

ORDERED that the Defendants' amended motion to dismiss (docket no. 16) is hereby construed as a motion for summary judgment and is GRANTED, and the above-styled civil action is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this action are hereby DENIED.

So ORDERED and SIGNED this 18th day of February, 2014.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE